UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) **COMPLAINT** |
| **VILLAGE OF WALTHILL, NEBRASKA,** | ) |
| Defendant. | ) |

The United States of America, by its undersigned attorneys, states and alleges as follows:

**Introduction**

1. The United States brings this civil action for declaratory and injunctive relief against the Village of Walthill, Nebraska ("Walthill" or "the Village"), under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. This civil action is based on the Village's unlawful refusal to allow Light of the World Gospel Ministries, Inc. ("LOTW" or the "Church"), a non-denominational Christian church, to construct a new place of worship on property it owns in a commercial ("C-1") district of the Village by denying the Church necessary permits.

2. Since 2007, LOTW has operated religious services out of a small, 1,250 sq. ft. building ("current building") on another lot in the C-1 district. The space is no longer adequate to serve its religious needs, and the unstable condition of a dilapidated building next to the church on the property made the space unsafe. The Village refused to permit LOTW to build its non-commercial religious property in the C-1 district, but has permitted noncommercial nonreligious entities to construct buildings in the C-1 district during the same time period.

3. The Village's conduct violates RLUIPA: (a) by imposing a substantial burden on LOTW's exercise of religion that is not justified by a compelling governmental interest pursued in the least restrictive means, 42 U.S.C. § 2000cc(a)(1); and (b) by treating LOTW on less favorable terms than comparable nonreligious institutions and places of assembly, *id.* § 2000cc(b)(1).

4. On July 2, 2018, LOTW filed suit against Walthill, alleging that the Village had violated its rights under the First Amendment and RLUIPA. *Light of the World Gospel Ministries, Inc. v. Vill. of Walthill, Nebraska*, No. 8-18-cv-312-LSC-SMB (D. Neb.) (hereinafter *LOTW v. Vill. of Walthill*).

## Jurisdiction, Venue, and Parties

5. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and under 42 U.S.C. § 2000cc-2.

6. Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this action occurred in the District of Nebraska.

7. The United States has the authority to bring this action under 42 U.S.C. § 2000cc-2(f).

8. Defendant Walthill, a village and municipal corporation in Thurston County, Nebraska, is governed by a five-member Board of Trustees ("the Board"), including a chairperson and vice chairperson, whose members serve four-year terms. The Planning Commission handles zoning and permitting requests for the Village. After conducting hearings, the Commission makes recommendations to the Board, which then votes to approve or disapprove the decision of the Commission. Walthill, Nebraska Zoning Regulations (hereinafter, "2014 Ordinance"), Art. 4.

9. Walthill is a "government" as defined by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i).

**Facts**

*LOTW and Its Need for a New Church*

10. LOTW is a multi-ethnic, nondenominational Christian church organized under the laws of Nebraska as a non-profit corporation and is a "religious assembly or institution" within the meaning of RLUIPA. 42 U.S.C. § 2000cc(2)(b)(l).

11. According to LOTW, its purpose is to worship God and Jesus Christ and to encourage others in the region to do the same. LOTW believes that to carry out this purpose it must regularly assemble to worship, including through collective prayer, song and teachings.

12. LOTW believes a central location in the Village is critical to its mission because the Church draws congregants and attendees from the rural areas and communities surrounding Walthill.

13. Since occupying its current building at 214 Main Street in 2007, LOTW has seen attendees at the Church's religious events increase from approximately 130 to approximately 200 individuals. LOTW's current building can accommodate only 130 individuals; thus, it has outgrown its space and only part of its congregation is able to meet and worship together at the same time.

14. In addition to religious services, LOTW provides religious educational programming for children in its current building. On Sundays, up to 20 children gather in a school room that is approximately 11 by 12.4 feet. The room does not adequately accommodate all the children who regularly attend the program.

15. Many members have stopped attending the Church because its current building is overcrowded. In addition, prospective members have chosen not to join the Church because there is insufficient space to accommodate them.

16. In addition to being too small, LOTW's current building has been unsafe because the roof and floor of an adjacent building have collapsed, and a construction company with whom LOTW consulted told LOTW that the remaining structure was close to collapsing. In September of 2016, LOTW sought a demolition permit to destroy the structure so that it would not topple over onto the church. The Village did not approve demolition of the structure until the spring of 2019.

17. In early 2013, LOTW purchased four additional properties on Walthill's Main Street for the purpose of constructing a larger place of worship. Lots 209, 211, 215 and 223 ("the Main Street properties"), consist of dilapidated and vacant structures directly across from its current location in the C-1 district. LOTW has a "property interest" in the Main Street properties within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(5).

18. At the time LOTW purchased the Main Street properties and before 2014, noncommercial uses were not allowed in the C-1 district under the ordinance in effect at the time ("Ordinance 1986"). Nevertheless, several noncommercial uses were operating in the C-1 district, including the Village Hall, the Village Library, the Walthill Senior Center, the Olive Branch Masonic Lodge, and LOTW's current building. The Village did not take any enforcement action against these uses.

*Walthill's Zoning Regulations and Comprehensive Plan*

19. Because the Village's zoning code did not allow noncommercial uses in the Village's C-1 zoning district prior to 2014, churches, places of worship and other noncommercial assemblies could locate only in the Village's agricultural, residential, and industrial zoning districts, and were required to obtain a special use permit (SUP) from the Village before they were allowed to do so.

20. In April 2014, the Village amended its zoning ordinance ("Ordinance 2014") to permit as special uses religious and other noncommercial assemblies in the C-1 district. However, like its predecessor (Ordinance 1986), Ordinance 2014 still prohibits noncommercial assemblies, including churches and other religious institutions, from operating by right in any district of the Village. Ordinance 2014 expressly states, "[p]ublic/quasi-public uses of an educational, recreational or religious type including nursery schools, churches, parsonages, other religious institutions" and "[p]ublic and private charitable institutions" are "specially permitted uses" that may locate in the C-1 district provided they first obtain an SUP. Ordinance 2014, § 504.04. Consequently, a religious group would need to seek an SUP from the Village to locate a place of worship anywhere in the Village.

21. Under Ordinance 2014, an SUP application must be approved by a majority of Board members, and that approval must be supported by findings of those members that the proposed use would: 1) be compatible with and similar to the use permitted in the district; 2) not be a matter which should require rezoning of the property; 3) not be detrimental to adjacent property; 4) not tend to depreciate the value of the surrounding structures or property; 5) be compatible with the stated intended use of the district; 6) not change the character of the district; and 7) be in accordance with the Comprehensive Plan.

22. In addition, Ordinance 2014 provides that if owners of adjacent properties, including those "extending three hundred (300) feet" from either side, "protest[ed]" the proposed use, an affirmative vote by three-quarters of the Board, that is, of at least four of the five Board members, is required for SUP approval. Ordinance 2014, § 504.04.

23. In March of 2014, Walthill adopted a new ten-year Comprehensive Plan, which set forth the Village's developmental goals for the decade ("2014 Comprehensive Plan" or "the Plan").

24. In its analysis of Walthill's land-use practices, the Plan notes "a deficiency" of public/quasi-public facilities, which include religious institutions, in the Village. The Plan goes on to note that the "public/quasi-public use" classification consists of only an estimated 1.1 acres per 100 people, "*approximately 61 percent less than the recommended Planning Standard*." 2014 Comprehensive Plan, § 4.8 (emphasis added).

25. To address this deficiency, the Plan proposes to allow land uses that fit the classification to remain in their existing locations, including commercial districts, and to "expan[d] to meet the service requirements of a growing community." 2014 Comprehensive Plan, § 4.14.

26. The Plan also sets forth as a goal the removal or repair of "dilapidated and unsightly buildings." 2014 Comprehensive Plan, §§ 2.3-2.4, 2.6-2.9. The Plan states specifically that "[a]ll future development and redevelopment activities should strive to eliminate any existing occurrences of deteriorating or dilapidated buildings." *Id*. at § 3.11.

*The Village's Revocation of LOTW's Building Permit*

27. In the spring and summer of 2013, after LOTW's purchase of its Main Street properties earlier that year, the Village Board held meetings with LOTW to resolve issues related to liens it held on certain parcels of LOTW's Main Street properties. On July 1, 2013, the Board, voted to release its tax lien on those properties in exchange for payment by LOTW.

28. On December 18, 2013, LOTW submitted an application for a building permit to construct a place of worship on its Main Street properties.

29. On January 14, 2014, the Board approved LOTW's December 18, 2013 application for a building permit.

30. At the time the Board approved the building permit and received payment for tax liens on the property, it knew that LOTW intended to use the Main Street properties to construct a place of worship.

31. In May of 2014, LOTW applied for a demolition permit to destroy the vacant, dilapidated buildings on its Main Street properties.

32. On June 2, 2014, the Village Board tabled the application of the demolition permits and placed the matter on the Board's July 2014 meeting agenda.

33. On or about June 25, 2014, an attorney for LOTW sent a letter to the Board raising concerns about the Village's refusal to grant the requested demolition permit and discussing several provisions of RLUIPA.

34. On July 2, 2014, the Board's Chairperson sent an email message to the Village Clerk regarding the agenda for the Board's July 8, 2014 meeting. The message stated: "[i]mmediately after the agenda items for the out of town people, please add the following items: 1) Executive Session to discuss possible litigation against the Village and to confer with our attorney[;] 2) Discussion of revocation of building permit number 01142014 approved on 1/14/2014 for LOTW Gospel Ministries-Discussion-Board action."

35. At its July 15, 2014 meeting, the Board voted to postpone consideration of the demolition permit. The Board also *revoked* the Church's building permit issued on January 14, 2014, thereby prohibiting construction of a new church building.

36. The July 15, 2014 meeting minutes state that the Board's sole reason for revoking the permit was the "testimony" of four individuals who attended the meeting. The meeting minutes state:

> Visitors speaking included Sherry Moniz-Dewey, Thomas Parker, Mitchell Parker and Lisa Drum with concerns regarding LOTW Gospel Ministries.
>
> As a result of the testimony given by visitors, Trustee Grant made a motion to revoke building permit #01142014 to LOTW Gospel Ministries. Voting aye: Ross, Grant and Porter. Nay: King: Absent: Appleton. Motion carried.

37. In filings in LOTW's suit against the Village, the Village admitted that the Village Board "revoked [LOTW's] building permit after [the four individuals] spoke [at the July 15, 2014 meeting] and alleged that LOTW had proselytized in ways they believed to be offensive or that members of [LOTW] held unfavorable religious views of Native Americans or of Native American religious beliefs." *LOTW v. Vill. of Walthill*, "Report of Parties' Planning Conference (Doc. 25) at 3-4.

38. From July 2014 through the winter of 2016, LOTW repeatedly renewed its May 2014 request for a demolition permit to remove dilapidated and deteriorating structures from its Main Street properties. The Village routinely delayed acting on LOTW's requests to remove the structures, citing vague reasons for its indecision, such as a need to obtain the "specific approval or consent" of the Omaha Tribe or its Tribal Council, which, in addition to having purchased an adjoining lot, was engaged in discussions with Board members about the economic development of Walthill.

*Village's Denial of LOTW's Application for Special Use Permit*

39. In June of 2017, the Village informed LOTW that in addition to needing a building permit, it would have to apply for and obtain an SUP to construct a church on its Main Street properties.

40. On June 7, 2017, LOTW submitted an application for an SUP to replace the dilapidated and vacant buildings on its Main Street properties with a worship facility for "Church services, Bible studies, youth and children ministries and cafeteria ministries."

41. At the time LOTW filed its SUP application, it was aware that the Village had recently approved the construction of a new Walthill library in the C-1 district a block away from the Main Street properties.

42. On July 10, 2017, the Village Planning Commission held a public hearing on LOTW's SUP application. At the meeting, Pastor Malcomson of LOTW testified that LOTW had "outgrown its current building and [had] no room to continue . . . worship and ministry there."

43. At the conclusion of the hearing and according to the meeting minutes, the Commission recommended to the Board that LOTW's application for a SUP be denied on the sole basis that the requested SUP "runs counter to the long-range comprehensive plans and the intended purposes of Walthill zoning regulations in the uses of C-1 properties." The Commission did not state at the hearing or anytime afterward in what way LOTW's plans to build a church on its properties was inconsistent with the Village's comprehensive or long-term plans or how LOTW's request was in conflict with the purpose of the Village's zoning regulations for the C-1 district.

44. On September 13, 2017, the Village Board followed the Planning Commission's recommendation and denied LOTW's SUP application. The Board gave no reason for denying LOTW's SUP.

45. The Village set forth no conditions by which LOTW could seek a reversal of its adverse decisions regarding the construction of a new church, making those decisions final.

46. The SUP request was consistent with the 2014 Ordinance in effect at the time of LOTW's application. Under the 2014 Ordinance, churches, religious institutions and other "[p]ublic/quasi-public uses of an educational, recreational or religious type" and "[p]ublic and private charitable institutions" were specially permitted uses in the C-1 district, where LOTW's properties were located.

47. The SUP was also consistent with the Village's Comprehensive Plan. The Comprehensive Plan allowed land uses that fit the classification of "public/quasi-public facilities," which include religious institutions such as LOTW's, to remain and expand in commercial districts to address the "deficiency" of such facilities in the Village and to further the goal of removing "dilapidated and unsightly buildings." Neither the Planning Commission nor any other entity speaking on behalf of the Village articulated any "long-range" plans to the contrary.

48. LOTW's efforts to construct a church and conduct religious activities on the properties constitute "religious exercise" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(7).

49. LOTW's proposals to establish a place of worship on its Main Street properties, which would involve the construction of a church and the transfer of funds, purchase of materials, and use of interstate highways, together with the Village's actions described in this

Complaint, affect interstate commerce within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(2)(B).

50. LOTW had a reasonable expectation that it could construct a worship facility on its Main Street properties.

51. The Village's actions described in this Complaint have created considerable delay, expense, and uncertainty for LOTW in its efforts to establish an adequate facility at which to worship and conduct other religious practices in the Village.

52. A renewed search for an alternative property in the Village that is suitable for LOTW's religious needs would impose additional delay, expense, and uncertainty on the Church, particularly as religious institutions and assemblies cannot operate by right in any district of the Village and LOTW would once again have to subject itself to the arbitrary decisions of the Village.

53. The Village's actions described in this Complaint have caused LOTW to suffer financial loss, including, but not limited to, attorneys' fees.

54. The Village's denial of LOTW's SUP application and the revocation of the building permit constitute the "application" of a "land use regulation" that "limits or restricts a claimant's use or development of land," 42 U.S.C. § 2000cc-5(5), and is an "implementation of a land use regulation" in which a government as defined by RLUIPA has made an "individualized assessment[] of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).

*The Village's Treatment of Nonreligious Assemblies and Institutions in the C-1 Zoning District*

55. Since Walthill's adoption of the 2014 Ordinance, the Board has approved at least two requests of nonreligious, noncommercial institutions or assemblies to construct or operate facilities in the C-1 district.

56. As referenced above, on April 25, 2016, the Board approved the relocation and construction of Walthill's public library a block away from LOTW and its Main Street properties in the C-1 district.

57. The new library was completed and open to the public in the spring of 2017. Its meeting room is available free of charge to individuals and groups to meet, discuss, and/or teach subjects of their choice.

58. On July 10, 2017, the Village also approved a permit for the Carl T. Curtis Health Education Center (CTCHEC) – Omaha Indian Tribe to construct a new building on Main Street in the C-1 district. The "intended use" of the clinic as listed on CTCHEC's application form was as a "clinic," with no further description provided on the form. As reflected in the Comprehensive Plan, the proposed center appears to be a non-profit organization that provides "educational" services to eligible recipients, as Walthill does not have a designated Medical Clinic in any of its districts.

## COUNT I: RLUIPA – Substantial Burden

59. The allegations above are incorporated by reference.

60. The Village's actions described in this Complaint constitute the imposition or implementation of a land use regulation that imposes a substantial burden on LOTW's religious exercise, which burden is not in furtherance of a compelling governmental interest and is not the least restrictive means of furthering such an interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l).

## COUNT II: RLUIPA – Equal Terms

61. The allegations above are incorporated by reference.

62. The Village's actions described in this Complaint constitute the imposition or implementation of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## PRAYER FOR RELIEF

**WHEREFORE,** the United States prays that this Court enter an order that:

A. Declares that Walthill's policies and practices, as alleged herein, violate RLUIPA;

B. Enjoins Walthill, its officers, employees, agents, successors, and all other persons in concert or participation with it, from:

   i. Imposing a substantial burden on the religious exercise of LOTW and its members that is not narrowly tailored to further a compelling governmental interest; and

   ii. Treating religious assemblies or institutions, including LOTW and its members, on less than equal terms with nonreligious assemblies or institutions;

C. Requires Walthill, its officers, employees, agents, successors, and all other persons in concert or participation with it, to:

   i. Take such actions as may be necessary to restore, as nearly as practicable, LOTW and its members to the position they would have been in but for Walthill's unlawful conduct, including, but not limited to, granting such approvals necessary to allow LOTW to construct a new church building on its Main Street properties; and

   ii. Take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future, including, but not limited to:

      1. Ensuring that religious assemblies or institutions are not treated on less than equal terms with nonreligious assemblies or institutions;

      2. Providing RLUIPA training to its personnel;

      3. Establishing procedures to address complaints of RLUIPA violations; and

      4. Maintaining records and submitting reports relating to RLUIPA compliance; and

D.    Awards such additional relief as the interests of justice may require, together with

the United States' costs and disbursements in this action.

Respectfully submitted,

|  |  |
|---|---|
|  | WILLIAM P. BARR<br>Attorney General |
| JOSEPH P. KELLY<br>United States Attorney<br>District of Nebraska | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division |
|  | SAMEENA SHINA MAJEED<br>Chief |
| **s/Laurie A. Kelly**<br>LAURIE A. KELLY<br>(MA 557575)<br>Assistant United States Attorney<br>United States Attorney's Office<br>District of Nebraska<br>1620 Dodge Street, Suite 1400<br>Omaha, Nebraska 68102-1506<br>Phone: (402) 661-3700<br>Facsimile: (402) 661-3081<br>Laurie.Kelly@usdoj.gov | **s/Nancy F. Langworthy**<br>CATHERINE A. BENDOR[1]<br>Deputy Chief<br>RYAN G. LEE<br>RLUIPA Coordinator<br>NANCY F. LANGWORTHY<br>(DC 377947)<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>United States Department of Justice<br>4 Constitution Square / 150 M Street NE<br>Washington, DC 20530<br>Phone: (202) 616-8925<br>Facsimile: (202) 514-1116<br>Nancy.Langworthy@usdoj.gov |

Dated: February 20, 2020

---

[1] Catherine Bendor and Ryan Lee are managerial employees who do not wish to register to file or receive electronic notifications in this case.